EDWIN A. LOMBARD, Judge.
 

 LThis is a personal injury action arising out of a rear-end motor vehicle accident. Deborrah Munch, plaintiff, brought this action against the rear-ending motorist, Nicholas Backer, and his insurer, United Services Automobile Association. Liability was stipulated, and a jury trial commenced solely as to damages. For the following reasons, we affirm the jury verdict judgment.
 

 Facts and Procedural History
 

 On April 20, 2000 at approximately 5:30 p.m., Mr. Backer was driving towards parking lot at the Contemporary Arts Center on Magazine Street in New Orleans when he struck Ms. Munch’s vehicle in the rear, causing it to hit the car in front of her. Ms. Munch filed the current suit on June 15, 2000, alleging injuries to her head, eyes, neck, and spine, claiming that injuries sustained from this accident required her to undergo four surgical procedures; an anterior cervical disc fusion, a lumbar procedure with annuloplasty, a carpal tunnel release of her right wrist, and a carpal tunnel release of her left wrist.
 

 This case first went to trial in March 2004, and this Court affirmed the jury verdict awarding Ms. Munch $7,431.33 in total damages.
 
 Munch v. Backer,
 
 2004-1136 (La.App. 4 Cir. 5/31/06), 932 So.2d 759 (Table). The Louisiana Supreme |2Court then remanded the matter to this Court for re-consideration of Ms. Munch’s claim of improper jury selection.
 
 Munch v. Backer,
 
 2006-1634 (La.5/18/07), 957 So.2d 141. We then vacated our prior decision and remanded the matter to the district court for a new trial.
 
 Munch v. Backer,
 
 2004-1136 (La.App. 4 Cir. 12/5/07), 972 So.2d 1249,
 
 writ denied,
 
 2007-2477 (La.3/7/08), 977 So.2d 909.
 

 This second jury trial occurred in May 2010. Liability was stipulated by defendants, and the trial was held solely on the issue of damages. At the conclusion of the trial, the jury entered a verdict awarding damages to Ms. Munch as follows:
 

 General Damages: $12,000.00
 

 Loss of Enjoyment of Life: $3,000.00
 

 Medical Expenses: $6,343.00
 

 Past Lost Wages: $8,960.00
 

 Future Loss of Earning Capacity: $0
 

 TOTAL DAMAGES: $30,303.00
 

 
 *185
 
 The trial court entered judgment on the jury’s verdict on May 24, 2010, and Ms. Munch timely appealed to this Court.
 

 Assignments of Error
 

 Ms. Munch first asserts that the trial court erred in denying various motions in limine, allowing the admission of certain evidence attacking her credibility as a witness. Ms. Munch next asserts that the trial court committed legal error in failing to properly instruct the jury as to causation. Lastly, Ms. Munch contends that the jury verdict award is abusively low, arguing that the jury committed manifest error in its awarding of damages and in not affording her a presumption of causation.
 

 |
 
 ¡¡Evidentiary Rulings
 

 Ms. Munch argues that the trial court erred in denying her motions in limine, thus allowing evidence and testimony concerning the following: 1) a curriculum vitae prepared by Ms. Munch in January 2000 and submitted as part of an employment application in which she falsified her educational background and prior work experience; 2) her employment by Stewart Enterprises in 1999, a year before the accident; and 3) a July 2001 slip-and-fall accident in which Ms. Munch filed suit.
 

 “With regard to admission of evidence at trial, a trial court is allowed great discretion, and determinations to admit or exclude evidence will not be reversed on appeal absent an abuse of that wide discretion.”
 
 Jemison v. Timpton,
 
 2009-1166, p. 8 (La.App. 4 Cir. 5/6/10), 38 So.3d 1021, 1027,
 
 quoting Miller v. Southern Baptist Hospital,
 
 2000-1352, p. 5 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, 15.
 

 The ability to attack the credibility of a witness is determined by La.Code Evid. art. 607.
 
 [1]
 
 In this matter, Ms. Munch made false representations in her |4curriculum vitae, claiming that she obtained two degrees from the University of New Orleans although she had none, and had never attended the university. Ms. Munch testified at trial the she put these college degrees on her resume because that is what job applications often required. Ms. Munch’s resume also stated that she had worked for an entity called Marine Equipment Corporation from 1992 to 1996, but Ms. Munch testified that this was not true. She testified that she had worked for two different employers from 1993 through 1995, but they had ended under unfavorable circumstances.
 

 
 *186
 
 As to the second evidentiary issue, Ms. Munch argues that the court erred in allowing testimony concerning her departure from an employer. In 1999 Ms. Munch worked for Stewart Enterprises, a national provider of funeral home services, where she performed clerical and bookkeeping work. Testimony and evidence from her employment at Stewart Enterprises also revealed complaints concerning her ability to write, and defendants’ trial exhibits included x-rays performed on her right wrist before the subject accident. An employee of Stewart Enterprises testified that Ms. Munch had not worked since October 1999 until her termination on December 23, 1999, and that she was terminated because of an inability to explain her absence from work.
 

 These first two evidentiary errors alleged by plaintiff have no merit, we find that the trial court did not abuse its discretion in allowing trial testimony and evidence concerning Ms. Munch’s curriculum vitae and discharge from Stewart Enterprises. Testimony concerning Ms. Munch’s educational background and inability to hold steady employment was certainly made relevant by her own claim for damages for lost wages and future earning capacity. Not only did Ms. Munch misrepresent her education history on her resume, this misrepresentation was I,.¡included as part of her answers to interrogatories.
 
 See
 
 La. Civ.Code. art. 1853. Such evidence that questions the character for truthfulness or untruthfulness of a witness is admissible. La.Code Evid. art. 608(A)(1). We agree with the trial judge’s assertion from the pre-trial hearing on the motions in limine, contained in the record, that the credibility of a witness is essential to the outcome of personal injury actions.
 

 Finally, Ms. Munch argues that the trial court should not have admitted any evidence or testimony concerning her lawsuit from a slip-and-fall down a set of stairs that occurred in July 2001. Ms. Munch argues that she “never saw or verified the petition.” This argument is without merit. A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. La. Civ.Code. art. 1853;
 
 see also C.T. Traina, Inc. v. Sunshine Plaza, Inc.,
 
 2003-1003, p. 5 (La.12/3/03), 861 So.2d 156, 159. Evidence of Ms. Munch’s fall down the stairs, and any injuries derived therefrom, is clearly relevant to compare with the damages alleged by plaintiff in the subject accident. Therefore, we find no abuse of discretion in the trial courts decision to allow evidence and testimony concerning Ms. Munchs lawsuit stemming from her July 2001 slip-and-fall.
 

 Jury Instructions on Causation
 

 Ms. Munch next raises assignments of error regarding the trial court’s instructions to the jury concerning causation. Plaintiff first argues that the trial court erred in placing the burden of proof of possible “intervening cause” on the plaintiff. Plaintiff objects to the following language provided to the jury:
 

 The defendant is only responsible for damages caused by his negligent act. He is not responsible for damages caused by separate, independent, or intervening causes of damage. The |Bplaintiff has the burden of proving that her injuries were not the result of separate, independent and intervening causes.
 

 Plaintiff admits that this language concerning intervening causes is the rule consistently held by this Court pertaining to intervening causes, but asks this Court to adopt a different rule in a line of cases from the Third Circuit. However, we see no error in our analysis of the law.
 
 See
 
 
 *187
 

 Laurent v. Jolly-Wright,
 
 2005-1499, p. 5 (La.App. 4 Cir. 1/10/07), 950 So.2d 47, 49-50. In this matter, defendant raised the issue of possible separate intervening causes to her injuries by presenting evidence concerning a subsequent motor vehicle accident in May 2001 and a fall down the stairs in July 2001. We find no legal error in the trial court’s jury instructions as to intervening causes.
 

 Plaintiff also argues that the trial court erred in its jury instructions as to causation by providing instructions concerning “substantial factor” causation and not “but-for” causation. In this matter, the jury instructions as to causation read as follows:
 

 In this matter, you must determine if plaintiff has proved by a preponderance of the evidence that she suffered injury and the injury she suffered was caused by the fault of the defendant. The legal term used to express this idea is “proximate cause.” This does not mean that the law recognizes only one cause of any injury, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things may operate at the same time, either independently or together, to cause injury or damage. A defendant’s conduct is a cause if it is a substantial factor in bringing about plaintiffs harm. Causation may be proved by circumstantial evidence, and that evidence need not negate all possible other causes, but it must exclude other reasonable hypotheses with a fair amount of certainty.
 

 Plaintiff has presented no ease law stating that the words “but-for” must be included in jury instructions as to causation. In this matter, within eighteen months of the subject accident, Ms. Munch had two other incidents that required medical |7attention: a May 18, 2001 car accident, and a July 18, 2001 slip and fall down the stairs. In the event of concurrent causes of an accident, the Louisiana Supreme Court has found the appropriate inquiry to be whether the conduct complained of was a “substantial factor” in bringing about the accident.
 
 Perkins v. Entergy Corp.,
 
 2000-1372, p. 8 (La.3/23/01), 782 So.2d 606, 611. While the trial court is required to correctly advise the jury of the correct legal principles, it is not required to use the specific wording preferred by the parties.
 
 Scott v. Dauterive Hosp. Corp.,
 
 2002-1364, p. 14 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, 1163. We find no legal error in the jury instructions pertaining to causation.
 

 Jury’s Application of Housley and Verdict Award
 

 Under
 
 Housley v. Cerise,
 
 579 So.2d 973 (La.1991), a plaintiff is entitled to a presumption of causation if three elements are met: 1) the person was in good health prior to the accident; 2) commencing with the accident, the symptoms of the disabling condition appeared and continuously manifested themselves afterwards; and 3) there is a reasonable possibility of a causal connection between the accident and the disabling condition.
 
 Housley,
 
 579 So.2d at 980. The jury instructions in this matter listed these
 
 Housley
 
 factors and further stated; “[t]o rebut this presumption, defendant must show some other particular incident could have caused the injury in question.”
 

 Plaintiff argues that the jury committed manifest error in not affording her the
 
 Housley
 
 presumption of causation. It is clear that the trial court issued proper instructions to the jury as to the
 
 Housley
 
 presumption of causation. Whether the jury granted this presumption or whether the jury determined the defendants rebutted the presumption cannot be truly known. The trial testimony, however,
 
 *188
 
 shows that Ms. Munch was not able to prove that she had good health prior to the 1 asubject motor vehicle accident of April 20, 2000.
 
 See Miller v. Tulane University Hospital,
 
 2009-1740, pp. 7-9 (La.App. 4 Cir. 5/12/10), 38 So.3d 1142, 1146-47 (plaintiff not afforded
 
 Housley
 
 presumption when unable to prove first element of good health prior to subject accident). We can only take plaintiffs assignment of error on
 
 Housley
 
 to be identical with her general claim that the jury committed manifest error in its awarding of damages.
 

 General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty.
 
 Duncan v. Kansas City So. Ry. Co.,
 
 2000-0066, p. 13 (La.10/30/00), 773 So.2d 670, 682. The standard of review applicable to a general damages award is the abuse of discretion standard.
 
 Bouquet v. Wal-Mart Stores, Inc.,
 
 2008-0309, pp. 4-5 (La.4/4/08), 979 So.2d 456, 459. The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand.
 
 Id.
 

 “The discretion vested in the trier of fact is ‘great’, and even vast, so that an appellate court should rarely disturb an award of general damages.”
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1261 (La.1993). Although reasonable persons may disagree regarding an award of general damages in a particular case, “[i]t is only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.”
 
 Id.
 
 Only if an abuse of discretion is found will the reviewing court refer to prior awards, and then only for the purpose of determining the highest or lowest point within the court’s discretion.
 
 Guillot v.
 
 D
 
 aimlerChrysler Corp.,
 
 2008-1485, p. 30 (La.App. 4 Cir. 9/24/10), 50 So.3d 173, 196.
 

 A jury’s determination of the amount, if any, of lost earning capacity is an issue of fact subject to the manifest error standard of review.
 
 Ryan v. Zurich American Ins. Co.,
 
 2007-2312, p. 13 (La.7/1/08), 988 So.2d 214, 222-23. Medical expenses are a component of special damages.
 
 Cormier v. Colston,
 
 2005-0507, p. 9 (La.App. 3 Cir. 12/30/05), 918 So.2d 541, 547. When a trier of fact assesses special damages, the discretion is more limited or narrower than the discretion to assess general damages.
 
 Dufrene v. Gautreau Family, L.L.C.,
 
 07-467 p. 22 (La.App. 5 Cir. 2/22/08), 980 So.2d 68, 83. The standard of review, however, is still that of abuse of discretion.
 
 Id.
 

 This is not a case that turns on causation, especially given that liability was stipulated. This is a simple personal injury and resulting damages case that hinges primarily upon credibility. Our review of the trial testimony and evidence reveal no abuse of discretion by the jury. The total damage award of $30,303.00 is not an abuse of the jury’s vast discretion. Ms. Munch herself proved to be an untruthful witness. The trial testimony revealed that from 1992 through 2000, she had only worked for a full year once, in 1994. According to Nathaniel Fentress, plaintiffs own testifying vocational rehabilitation expert, Ms. Munch was a bookkeeper and clerical worker, and not an accountant, and not a C.P.A. The trial testimony of numerous witnesses, including Ms. Munch herself, revealed a clear inability to hold consistent employment and to appear for work throughout the decade preceding the subject accident. The jury did not abuse its discretion in awarding $8,960.00
 
 *189
 
 in past lost wages and zero dollars for loss of earning capacity.
 
 See Ryan,
 
 2007-2312, pp. 13-14, 988 So.2d at 223.
 

 ImThe jury also did not abuse its discretion as to damages for medical expenses. Ms. Munch had an x-ray performed on her wrist prior to the subject accident. Following the subject accident, she did not go to the emergency room, while she did after her May 18, 2001 car accident. While at the emergency room following this second accident, Ms. Munch did not tell her treating physician that she was having neck surgery within five days. She did not attend most of her physical therapy sessions. Her physical therapist, Chesson Clement, testified that she was engaged in clear “symptom magnification.” While she claimed to have poor rotation of her neck in therapy, Mr. Clement witnessed her backing out of his clinic’s parking lot with her head moving freely. Testimony from the various physicians also revealed that she felt pain in her wrists following her July 2001 fall down the stairs, not after the subject accident. The award of general damages, loss of enjoyment of life, and medical expenses given by the jury cannot be said to constitute an abuse of discretion. The jury did not have sufficient evidence or testimony to connect plaintiffs surgeries with the subject accident, and awarded an appropriate total damage award for soft-tissue injuries to a plaintiff it found not completely credible. In essence, trial testimony does not reveal an abuse of discretion by the jury in its total damages award.
 

 Conclusion
 

 This Court finds no abuse of discretion in the trial court’s evidentiary rulings. We find no legal error in the trial court’s jury instructions pertaining to causation. We find no abuse of the jury’s vast discretion in its award of damages. The judgment of the trial court is affirmed.
 

 AFFIRMED
 

 [1]
 

 . Art. 607. Attacking and supporting credibility generally
 

 A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
 

 B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
 

 C. Attacking credibility intrinsically.
 
 Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.
 

 D.Attacking credibility extrinsically.
 
 Except as otherwise provided by legislation: (1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
 

 (2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice, (emphasis added).